UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NORMAN ROTH, as president and on
behalf of SYRACUSE PROPERTY
OWNERS ASSOCIATION and NORMAN
ROTH, individually, JAKE AND BUCK,
LLC, HAPPY BIRDS LLC, FORT ALLEN
LLC, BENJAMIN TUPPER, ROBERT
FRANK, EUCLID, INC., AVON, INC.,
RELVCO, INC., WILLIAM
OSUCHOWSKI and LEGACY
MANAGEMENT CNY, INC,

                    Plaintiffs,


          -v-                              5:24-CV-929


THE CITY OF SYRACUSE,
BEN WALSH, as Mayor of the City of
Syracuse, THE DIVISION OF CODE
ENFORCEMENT OF THE
DEPARTMENT OF COMMUNITY
DEVELOPMENT OF THE CITY OF
SYRACUSE, and JAKE DISHAW, as
Deputy or Acting Code Enforcement
Office and Zoning Administrator of the
City of Syracuse,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:


HOCHERMAN TORTORELLA               ADAM L. WESTEIN, ESQ.
     & WEKSTEIN, LLP
Attorneys for Plaintiffs
One North Broadway, Suite 400
White Plains, NY 10601

GRECO, TRAPP LAW FIRM  CHRIS G. TRAPP, ESQ.
Attorneys for Plaintiffs
14 Lafayette Square, Suite 1700
Buffalo, NY 14203

THOMAS M. ROBERTSON  THOMAS M. ROBERTSON, ESQ.
Attorneys for Plaintiffs
614 James Street, 2nd Floor
Syracuse, NY 13203

CITY OF SYRACUSE    TODD M. LONG, ESQ.
 LAW DEPARTMENT   DANIELLE R. SMITH
Attorneys for Defendants   EMILY A. D'AGOSTINO
City Hall
Room 300
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

On June 24, 2024, plaintiffs Norman Roth, as president and on behalf of the Syracuse Property Owners Association (the "SPOA"), Norman Roth, individually ("Roth"), Jake and Buck, LLC ("J&B"), Happy Birds LLC ("Happy Birds"), Fort Allen LLC ("Fort Allen"), Benjamin Tupper ("Tupper"), Robert Frank ("Frank"), Euclid, Inc. ("Euclid"), Avon, Inc. ("Avon"), Relvco, Inc. ("Relvco"), William Osuchowski ("Osuchowski"), and Legacy Management Cny, Inc. (Legacy") (collectively "plaintiffs") brought a 42 U.S.C. § 1983 case against defendants the City of Syracuse (the "City"), the Mayor of the City of Syracuse, Ben Walsh ("Mayor Walsh"), the Division of Code

Enforcement of the Department of Community Development of the City of Syracuse (the "Division"), and Jake Dishaw as Deputy or Acting Code Enforcement Officer and Zoning Administrator of the City of Syracuse ("Deputy Dishaw") (collectively "defendants") in the New York Supreme Court in the County of Onondaga for purported violations of the Fourth Amendments.  Dkt. No. 2.  Defendants promptly removed plaintiffs' case to the U.S. District Court for the Northern District of New York on July 26, 2024.  Dkt. No. 1.

On August 2, 2024, defendants answered plaintiff's state court complaint, denying their allegations.  Dkt. No. 6.  Thereafter, defendants moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) on September 27, 2024.  Dkt. No. 21.  Plaintiffs opposed and cross-moved for leave to amend their complaint.  Dkt. No. 29.  Defendants filed their reply and have opposed plaintiffs' cross-motion for leave to amend.[1] Dkt. No. 31.  Thus, the motion has been fully briefed and will be considered on the basis of the submissions and without oral argument.

---

[1] Plaintiffs have attached a red-lined version of their proposed amended complaint to their opposition papers as required under the Local Rules of the Northern District of New York ("Local Rules").  Dkt. No. 29-2.

## II. <u>BACKGROUND</u>[2]

Roth is the principal of over eighty New York Limited Liability Corporations ("LLC(s)").  Compl. ¶ 5.  Each of Roth's LLCs own at least one non-owner-occupied one-family or two-family homes in the City.  *Id*.

Within the City, owners of one and two-family non-owner-occupied homes are required to obtain a Rental Registry Certificate in order to lawfully lease or rent the premises.  Compl. ¶ 37.  Rental Registry Certificates are valid for three years.  *Id*. ¶ 38.  Failure to obtain a Rental Registry Certificate prohibits the owner from renting their home, collecting rent from an existing occupant, or commencing or maintaining an eviction proceeding for the non-payment of rent for the period of occupancy prior to the issuance of the Rental Registry Certificate.  *Id*. ¶ 41.  Further, once the owner obtains a Rental Registry Certificate, they may only collect fair market value rent—not the agreed upon rent—from an occupant for the period the owner did not have a Rental Registry Certificate.  *Id*. ¶ 42.

In order to obtain a Rental Registry Certificate, the owner must submit an application and pay a processing fee of $150 for each of the homes they intend to lease or rent.  Compl. ¶¶ 38, 40.  An exterior and interior inspection of the

---

[2] The following facts—assumed true for the purposes of this motion—are taken from plaintiffs' state court complaint.

house is also required prior to issuance of the Rental Registry Certificate.  *Id.*

¶ 46.  Rental Registry § 27-133(a)(7) provides in relevant part:

> The property being registered must pass an exterior
> and interior inspection conducted by employees of the
> division of code enforcement. Interior inspections shall
> be conducted either with consent of the property
> owner, property manager, or tenant(s), or pursuant to
> an inspection warrant issued by a court of competent
> jurisdiction in accordance with the procedures
> outlined below. This shall not be construed to require
> a person to consent to an inspection of the property in
> order to determine compliance with applicable code
> provisions.

*Id.* ¶ 47.

Notably, § 27-133(a)(7) does not impose a timeline for the City or other

officials to obtain an inspection warrant in the event of non-consent.  Compl.

¶¶ 55–56.  Plaintiffs have applied for Rental Registry Certificates.  *Id.* ¶¶ 68,

79, 84, 90, 96, 101, 106.  In each of plaintiffs' applications, they declined to

consent to an inspection.  *Id.*  Defendants have not sought inspection

warrants for plaintiffs' properties and have thus, declined to issue or renew

plaintiffs' Rental Registry Certificates.  *Id.* ¶¶ 115–16.

When speaking to the principal of one of Roth's LLCs, code enforcement

officer Ryan O'Neill said "words to the effect of: the City is going to keep

fining you until you let them inside."  Compl. ¶ 114.

## III.  LEGAL STANDARD

"To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

In deciding the motion, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation omitted).

## IV.  DISCUSSION

### A.  Defendants' Motion for a Judgment on the Pleadings

Defendants have moved for a judgment on the pleadings pursuant to Rule 12(c) dismissing plaintiffs' complaint in its entirety with prejudice.  Defs.' Mem., Dkt. No. 21-4 at 9.[3]

---

[3] Pagination corresponds to CM/ECF header.

1. **Proper Parties**

However, before turning to the merits of defendants' motion, there are a couple of housekeeping issues that must first be resolved regarding the named defendants.

First, plaintiffs have named the Division as a defendant in addition to the City. Defendants argue that the Division must be dismissed because it lacks the capacity to sue or be sued as a mere administrative arm of the City. Defs.' Mem. at 12. Defendants are correct.

The Division is an administrative arm of the City. Therefore, it lacks the requisite "legal identity separate and apart from the municipality and . . . cannot sue or be sued." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 132 (N.D.N.Y. 2024) (quoting *Rose v. Cnty. Of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)). Accordingly, the Division will be dismissed from this action.

 Second, plaintiffs have named Mayor Walsh and Deputy Dishaw in their official capacities. Defendants argue that plaintiffs' claims against Mayor Walsh and Deputy Dishaw in their official capacities are duplicative of the same claims that plaintiffs have asserted against the City. Defs.' Mem. at 12–13.

As relevant here, "[u]nder limited circumstances, a plaintiff can pursue an 'official-capacity' claim against a public official using a doctrine called *Ex*

*parte Young*, which evades the Eleventh Amendment's bar to suit." *Bennett v. N.Y. State Thruway Auth.*, 2024 WL 1053222, at *8 (N.D.N.Y. Mar. 11, 2024) (citing *Frantti v. N.Y.*, 2017 WL 922062, at *5 (N.D.N.Y. Mar. 8, 2017)). But *Ex parte Young* is a narrow doctrine. *See id.* For it to apply, the plaintiff must plausibly allege "(1) an ongoing violation of federal law; and (2) seek relief that can properly be characterized as forward-looking; *i.e.*, prospective." *Id.* (citing *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014)).

Upon review, plaintiffs have not plausibly alleged claims against Mayor Walsh and Deputy Dishaw under the doctrine of *Ex parte Young*. As discussed below, plaintiffs have not plausibly alleged an ongoing violation of federal law. *Infra.* Therefore, plaintiff has not plausibly alleged *Ex parte Young* liability as to either Mayor Walsh or Deputy Dishaw. Accordingly, they will be dismissed as defendants from this action.

The Court will now proceed to analyze the merits of defendants' motion for a judgment on the pleadings as to the last remaining defendant: the City.

### 2. <u>Plaintiffs' Claims Against the City</u>

Plaintiffs have advanced two claims against the City: (1) violations of plaintiffs' Fourth Amendment rights; and (2) violations of Article I § 12 of the New York State Constitution. Compl. ¶¶ 63–130. Plaintiffs allege that

defendants' policies and/or practices were violative of their federal and New York State constitutional right to be free from unreasonable searches.

i. Plaintiffs' *Monell* Claim

First, plaintiffs have advanced a *Monell* claim against the City for violations of their Fourth Amendment rights.  Compl. ¶¶ 63–125.

To state a plausible claim under *Monell* plaintiffs must allege that a municipal policy or custom caused them to be subjected a deprivation of a constitutional right.  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023).  As relevant here, the official policies of a municipality include "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Defendants argue that plaintiffs have failed to assert a plausible *Monell* claim against the city.  Defs.' Mem. at 28–31.  Defendants point out that plaintiffs allege that the Rental Registry Certificate application process specifically permits plaintiffs to either *consent* to a search of their homes or for the city to obtain *warrants* to conduct the search.  *Id.*  Defendants further argue that plaintiffs have not plausibly alleged the existence of an established policy that amounts to a constitutional deprivation.  *Id.* at 28.  Defendants point to plaintiffs' failure to allege the existence of certain actions taken by or directed by the City's authorized policy makers.  *Id.*  Defendants

urge that plaintiffs' allegation of a singular statement by a non-policy making individual, *supra*, similarly fails to support their *Monell* claim.

Plaintiffs' *Monell* theory rests upon the City's alleged widespread practice of conditioning Rental Registry Certificates upon a search of the applicant's home.  Compl. ¶ 120.  According to plaintiffs, the City has proliferated a "putative policy and *de facto* practice" of failing to issue or renew Rental Registry Certificate where the applicant has declined to give consent for an interior inspection.  *Id*.  Plaintiffs assert that where applicants decline consent, the City has failed to seek an inspection warrant.  Thus, conditioning the Rental Registry Certificate upon their consent to an exterior and interior inspection, or, search.  Plaintiffs rely therefore on the City's policy as codified by §27-133(a)(7) *and* on the City's alleged custom of enforcing the policy in a way that conditions the applicant's success on consenting to a search of their home.[4]

Upon review, plaintiffs' allegations are insufficient to support a plausible *Monell* claim.  First, plaintiffs' own allegations do not support that § 27-133(a)(7) violates the Fourth Amendment.  The policy calls for the applicant to either consent or for the City to seek an inspection warrant.  As the

---

[4] As discussed above, plaintiffs have also asserted that code enforcement officer Ryan O'Neill said "words to the effect of: the City is going to keep fining you until you let them inside."  Compl. ¶ 114.  However, a code enforcement officer is not a policy maker, thus, the statement cannot establish plausible municipal liability under *Monell*.  *Friend*, 61 F.4th at 93.

touchstone of the Fourth Amendment is *reasonableness*, a search performed pursuant to a validly issued warrant is not unreasonable as a matter of law.

A review of the text of § 27-133(a)(7) confirms that it does not permit the City to compel plaintiffs to consent or agree to a search. Likewise, § 27-133(a)(7) does not empower plaintiffs to compel the City to seek a warrant to conduct a search. In other words, there is nothing in the Rental Registry Certificate application process that *requires* the City to obtain a warrant for an inspect or *requires* an owner to consent to an inspection. Section 27-133(a)(7) plainly does not amount to a Fourth Amendment violation.

Next, plaintiffs allege that the City has enforced § 27-133(a)(7) in a way that has essentially conditioned a Rental Registry Certificate on an unlawful search by forcing the applicant to consent. Plaintiffs allege that on each of their applications, they declined consent to an inspection, Compl. ¶¶ 68, 79, 84, 90, 96, 101, 106, and that each of their applications have remained pending because the City has not sought inspection warrants. Plaintiffs further allege that many of their applications were filed more than two years ago. *Id*. ¶ 59.

Notably, however, plaintiffs do not allege that any of their homes were subjected to a search against their wishes. Plaintiffs' contentions are only that the City has yet to obtain an inspection warrant and that their applications have gone unresolved in the meantime. On this basis, plaintiffs

assert that that the City's enforcement of § 27-133(a)(7) has the *effect* of mandating the applicant's consent to a search of their home by the City as a condition of obtaining a Rental Registry Certificate. This is not sufficient to support the existence of a municipal practice or custom that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted).

Therefore, plaintiffs have failed to set forth a plausible *Monell* claim. Accordingly, this claim (Count I) will be dismissed.

ii.  Plaintiffs' New York State Constitutional Claim

Turning next to plaintiffs' New York State constitutional claims: defendants principally argue that plaintiffs' state law claims must be dismissed because they have an alternative remedy available under § 1983 for violations of parallel provisions of the federal Constitution. Defs.' Mem. at 32–33. Plaintiffs respond in opposition that unlike § 1983, the New York State constitution permits plaintiffs to proceed under a theory of *respondeat superior* for violations of Article I § 12. Pls.' Opp'n at 22–23.

As an initial matter, "[d]istrict courts in this Circuit have consistently held that 'there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.'" *Yagel, v. Town of Haverstraw*, No. 2024 WL 5090174, at *3 (S.D.N.Y. Dec. 11, 2024) (citations omitted). However, where the state constitution affords the

plaintiff a remedy that is "significantly broader than under § 1983" the state constitution does provide a private right of action. *Greene v. City of N.Y.*, 725 F. Supp. 3d 400, 422 (S.D.N.Y. 2024) (citation omitted). Unlike § 1983, or *Monell* claim, plaintiffs bringing suit under the New York State constitution may do so under a theory of *respondeat superior*. *Greene*, 725 F. Supp. 3d at 422 (citation omitted) ("there is a *respondeat superior* remedy under the New York State Constitution that is significantly broader than that under Section 1983."); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").[5]

Even assuming that plaintiffs have a private right of action under Article I § 12 of the New York State constitution, they have nonetheless failed to state a cognizable claim. As discussed above, plaintiffs have failed to plausibly allege that § 27-133(a)(7) as written or as enforced constitutes an unreasonable search of their homes. Further, plaintiffs have failed to plausibly allege conduct of the City's employees under a theory of *respondeat superior* that could support municipal liability here.

---

[5] Under the common law tort doctrine of *respondeat superior*, an employer may be held "vicariously liable for torts committed by an employee acting within the scope of the employment." *Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95, 96 (N.Y. 1999). That is, the employer may be held liable "when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment[.]" *Id.*

Plaintiffs point only to the statement made by code enforcement officer Ryan O'Neill: "the City is going to keep fining you until you let them inside." Compl. ¶ 114.  Even assuming that this statement was made within the scope of O'Neil's employment, this statement alone is insufficient to support a plausible violation of Article 1 § 12.  This is especially so in light of the New York State court's restrictive approach to recognizing implied rights in the constitutional context.  Therefore, plaintiffs have failed to advance a plausible New York State constitution claim.  Accordingly this claim (Count II) will be dismissed.

### B. <u>Plaintiffs' Cross-Motion for Leave to Amend</u>

Plaintiffs have also cross-moved for leave to amend pursuant to Rule 15. Pl.'s Opp'n, Dkt. No. 29-18 at 11–15.  Defendants have opposed plaintiffs' cross motion.  Defs.' Reply, Dkt. No. 31 at 24.

"Rule 15 permits a party to amend its pleading once as a matter of course no later than twenty-one days after serving its pleading, or 'if the pleading is one to which a responsive pleading is required, [twenty-one] days after service of a responsive pleading or [twenty-one] days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.'" *Barbuto v. Syracuse U.*, 2024 WL 3519684, at *8 (N.D.N.Y. July 24, 2024), *reconsideration denied,* 2024 WL 4135716 (N.D.N.Y. Sept. 10, 2024) (quoting FED. R. CIV. P. 15(a)). However, "[o]nce this twenty-one[-day]-window has closed, the Federal Rules

direct the party seeking to amend to either obtain the opposing party's written consent or the Court's leave." *Id.* A court may deny leave to amend where the amendment would be futile. *Id.* (citing *In re Trib. Co. Fraudulent Conv. Litig.*, 10 4th 147, 175 (2d Cir. 2021)).

Plaintiffs have complied with Local Rule 15.1(a) and attached a proposed pleading to their motion papers. Prop. Am. Compl., Dkt. No. 29-2. However, a review of the amended complaint reveals that the proposed amendment would be futile. While plaintiffs would abandon all of their claims except those properly addressed to the City, plaintiffs have nonetheless still failed to state a plausible claim for relief. While plaintiffs have included additional factual assertions, they still do not survive the plausibly requirements imposed at the motion for a judgment on the pleadings posture.

## V. <u>CONCLUSION</u>

In sum, plaintiffs have not set forth sufficient factual allegations in their complaint that plausibly support their causes of action. Plaintiffs first improperly attempted to sue the Division of Code Enforcement in addition to the City—a mere administrative arm of the City without the capacity to sue or be sued. *Supra.* Plaintiffs then named individual defendants Mayor Walsh and Deputy Dishaw in their official capacities. *Supra.* Plaintiffs failed to plausibly allege a cause of action under the doctrine of *Ex parte Young*. *Supra.* Thus, those claims were again duplicative of their claims

against the City.  As for plaintiffs' *Monell* and New York State constitutional claims against the City, plaintiffs again failed to plausibly allege that that a policy and/or practice of the city amounted to a violation of plaintiff's constitutional rights.  Finally, plaintiffs' request for leave to amend will be denied because a review of the proposed amended complaint reveals such amendment would be futile.

Therefore, it is

ORDERED that

1.  Defendant's motion for a judgment on the pleadings pursuant to Rule 12(c) is GRANTED;

2.  Plaintiffs' motion for leave to amend the complaint is DENIED; and

3.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  January 29, 2025
        Utica, New York.